In the Matter of the GUARDIANSHIP OF
Christ G. PAPPAS.

Sam CONIS, Appellant,

v.

John N. STOM, Guardian of the Property of
Christ G. Pappas, Appellee.

No. 53888.

Supreme Court of Iowa.

Feb. 10, 1970.

Genung & Rogers, Glenwood, for appellant.

Richard C. Turner, Des Moines, for appellee.

LeGrand, Justice.

This appeal is from an order approving a guardian's final report and dismissing a claim for food, lodging, and medical services allegedly furnished the ward.

We refer to appellant as claimant and appellee as guardian. There is some dispute as to whether he should more properly be called a conservator. However, since section 633.3(20), Code of Iowa, permits the use of the terms interchangeably, we adopt the designation appellee chooses in his brief.

This controversy has a long—too long—history dating back to 1962, when a guardian was appointed for Christ G. Pappas. On April 24, 1964 claimant filed his claim for $7500.00 for "the necessities of life" furnished Mr. Pappas from November, 1955, to November, 1960, including food, lodging, and medical expense.

On May 11, 1964 the guardian served notice on the claimant, advising him his claim would be heard on May 23, 1964. No hearing was had then or thereafter, although claimant asserts he appeared at the specified time and place and was ready to proceed.

Two years passed without action by either party to bring the matter to a conclusion, and on June 29, 1966, Christ G. Pappas died. At that time the claim was still pending.

An administrator of Christ G. Pappas' estate was appointed on July 5, 1966. Later he resigned and was succeeded by John N. Stom, who is also the guardian.

The guardian filed his final report, asking among other things that the claim of Sam Conis, claimant herein, be "disposed of." Promptly thereafter claimant filed a request for hearing on his claim.

Almost a year after the appointment of an administrator, the guardian gave formal notice of disallowance of claim as provided in section 633.439, and 633.440, Code of Iowa.

Thereafter the guardian requested and received permission for his attorney to travel to Perry, Iowa, and to Denver, Colorado, to take depositions "in order that he may properly defend against the claim of Sam Conis."

The deposition in Denver was set for a specific time and notice to that effect was served on claimant's attorneys of record. It does not appear whether the deposition was ever taken.

After all this the guardian finally, on September 5, 1967, raised for the first time the issue he relies on here—that the death of Christ G. Pappas on June 29, 1966, terminated the guardianship under the provisions of 633.675, Code of Iowa, and this claim therefore cannot now be determined in the guardianship.

The court below, sitting in probate, agreed and dismissed the claim, holding claimant must proceed in the estate, rather than the guardianship, to enforce any claim he has.

It is from this order that claimant has appealed, asserting he is entitled to have his claim heard and ruled on in the guardianship.

Important to a consideration of this matter are the provisions of sections 633.-675, 633.677, and 633.678, Code. They are in part as follows:

"633.675. A guardianship shall cease, and a conservatorship shall terminate, upon the occurrence of any of the following circumstances:

"1. * * *

"2. The death of the ward.

"3. * * *

"4. * * *"

"633.677. Upon the termination of a conservatorship, the conservator shall pay the costs of administration, and render a full and complete accounting to the ward or his personal representative and the court. * * *"

"633.678. Upon the termination of a conservatorship, all assets of the conservatorship shall be delivered, under direction of the court, to the person or persons entitled to them."

It is, of course, true that the death of a ward terminates the guardianship under our statute. See also In re Guardianship of Damon, 238 Iowa 570, 574, 28 N.W.2d 48, 50.

■ The proper place for determining this claim following decedent's death was in the estate proceedings. Our statutes are clear and unambiguous in laying down that procedure. Quite obviously the legislature did not intend that two courts, or two divisions of the same court, administer the same assets and process the same claims.

However, this is not a jurisdictional requirement. We have only one court of general jurisdiction—the district court. It sits at law, in equity, and in probate. Under section 633.10, Code, the district court acting in probate has jurisdiction of the estates of decedents and of conservatorships and guardianships.

This was equally true before the adoption of our probate code, which became effective January 1, 1964.

In the Guardianship of Damon, supra, at page 573 of 238 Iowa Reports, pages 49 and 50, of 28 N.W.2d, decided prior to that date, we said,

"Appellant's principal contention upon this appeal [involving a hearing on objections to a guardian's final report] is that the probate court was without power or jurisdiction to hear or determine objector-

appellee's claim against him and that appellee's only remedy was an action against appellant in a court of competent jurisdiction. The contention is without merit.

"In this state the probate court is not a separate or distinct court with powers and jurisdiction strictly its own. It is part of the district court, which has general, original jurisdiction of all actions, proceedings, and remedies. We have frequently pointed out there is but one court of general jurisdiction in Iowa—the district court. Before it all proceedings come, whether law, equity or probate. Forms of action differ but they are not controlling. Separate dockets are kept merely for convenience and efficiency, to expedite the administration of justice. The remedy to which a party is entitled may be awarded in utter disregard of its place on the calendar unless objection is raised in the manner prescribed by statute—a motion to transfer to the proper docket. If no such motion is made, any error in the kind of proceedings adopted is waived. See sections 611.7, 611.9, 611.12, Code 1946."

And in Smith v. Ketelsen, 256 Iowa 283, 288, 127 N.W.2d 91, 94, decided after the effective date of the probate code, we quoted this rule and held that differences as to forum are procedural, not jurisdictional. See also In re Estate of Allen, 247 Iowa 618, 620, 75 N.W.2d 241, 242.

■ It is also firmly established that failure to request transfer to the proper docket waives any irregularity in this regard.

Section 611.12, Code, reflects this general policy. It provides:

"An error as to the kind of proceedings adopted in the action is waived by a failure to move for its correction at the time and in the manner prescribed in this chapter; and all errors in the decisions of the court are waived unless excepted to at the time, save final judgments and interlocutory or final decrees entered of record."

Discussing this matter in Damon, we said (238 Iowa at page 573, 574, 28 N.W.2d at page 50):

"Since appellant made no request to the lower court to transfer the cause to either law or equity he is in no position to complain here that the cause was heard and determined by the district court while sitting in probate. In the absence of a motion to transfer to another docket the court, in probate, had all the power and jurisdiction with respect to this controversy it would have either at law or in equity. It is not contended the district court was without jurisdiction to hear and determine the matters in issue. * * *

"In this opinion we assume, without in any way deciding, appellee should have asserted her claim against Burnett at law, or perhaps, on some tenable theory, in equity rather than in probate. * * *

"The court, sitting in probate, was not deprived of jurisdiction by the ward's death. It is true that upon such death the powers and duties of the guardian ceased, except the duty to report and account for the assets which had come into his hands. The guardianship, in a sense, continued for the purpose of such accounting and to enable the guardian to turn over the assets in his hands to the proper person. 25 Am. Jur. 37, 38, section 53; 39 C.J.S. Guardian and Ward § 41, pp. 61, 62; Pugh v. Jones, 134 Iowa 746, 112 N.W. 225, 11 L.R.A.,N.S., 706, 120 Am.St.Rep. 451, 13 Ann.Cas. 499. The property in the hands of the guardian was still in custodia legis although his ward had died. Pugh v. Jones, supra. At least in the absence of any motion in the court below to transfer the cause to another docket the court was not without jurisdiction because of the ward's death."

If anything the circumstances here are stronger for claimant than in the Damon case, because here we are talking about the *same division* of the district court. Whether the claim is heard in the estate or in the guardianship, it is still in probate court.

It is manifest that a claimant does not forfeit his right to recover a valid debt because the debtor dies before his rights are settled.

Rule 18, Rules of Civil Procedure, provides:

"When a guardianship shall cease * * * by the decease of [the] ward, any action or proceeding then pending shall not abate, but * * * the executor or administrator of such person * * * shall be substituted or joined as a party thereto * * *."

The Rules of Civil Procedure are applicable to the proceedings here by virtue of section 633.444, Code of Iowa. Under section 633.666 this is true in either estate or guardianship matters.

Following decedent's death both claimant and guardian proceeded as though the claim should be heard in the guardianship. Each requested the claim be set for hearing; the guardian gave notice of disallowance; in his final report he requested the court to dispose of the claim; he also secured authority to spend guardianship funds to take depositions to prepare for his defense of the claim. At no time did anyone suggest this was not the proper place for hearing.

Each party now points an accusing finger at the other for having caused the unreasonable delay responsible for the predicament in which they now find themselves. But this is not a one-way street. Either had at hand the procedure by which to get a prompt hearing. They are equally guilty of procrastination. We are not critical of present counsel, both of whom entered the case long after the death of Christ G. Pappas.

Limiting our holding to the specific factual situation before us, we hold the court erred in dismissing the claim and that claimant is entitled to a hearing in the guardianship proceedings.

We base this conclusion on the fact no jurisdictional problem is involved and the

guardian has waived his right to raise the objection that the claim must be filed in the estate proceedings. If the point is timely raised, a matter of this kind is properly triable in the estate proceedings rather than the guardianship.

The guardian seeks to distinguish this case from In re Damon's Guardianship, supra, because there a hearing or trial was actually held without objection. Here the objection was raised before the hearing stage was reached. We do not find that distinction important. The guardian acquiesced in these proceedings, asked for a hearing, and prepared to defend. Only at the last moment did he give any indication he would resist claimant's right to a hearing.

No prejudice can result from this holding. The parties and issues are identical no matter where the claim is heard. So is the court. Counsel for both sides rely on In re Damon's Guardianship, supra, from which we have already quoted, to support their opposing positions. We believe that case is authority for claimant. It fully justifies the result we reach.

We sustain the objections to the guardian's final report and remand with directions that claimant be granted a hearing on the merits of his claim now pending in the matter of the Guardianship of Christ G. Pappas.

■ We mention one other matter. After the probate court's order denying him a hearing in the guardianship, claimant filed a belated claim in the estate. The guardian expresses some apprehension that claimant may thereby somehow become entitled to *two* hearings, even though so far he hasn't been able to get *one*. It goes without saying that nothing we have said gives any right to a hearing in both the guardianship and the estate. The probate court has ample authority to prevent such a result.

Reversed and remanded.

All Justices concur.